**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 14-cv-1747<br>)<br>) JURY TRIAL DEMANDED |
| SIGMATEK, INC., MARATHON TECHNOLOGIES, INC., JERRY KOZLOWSKI, and LAWRENCE McCARTHY, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, UNITED STATES LIABILITY INSURANCE COMPANY ("USLI"), by and through its attorneys, ADLER MURPHY & McQUILLEN LLP, hereby files this Complaint for Declaratory Judgment against Defendants, SIGMATEK, INC. ("Sigmatek"), MARATHON TECHNOLOGIES, INC. ("Marathon"), JERRY KOZLOWSKI ("Kozlowski") (collectively, "Sigmatek Defendants"), and LAWRENCE McCARTHY ("McCarthy") as relator for the UNITED STATES OF AMERICA:

### INTRODUCTION

1. This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 for the purpose of resolving an actual controversy between the parties and construing the rights and obligations of USLI under an Employment Practices Liability Insurance Policy issued by USLI to Sigmatek.

2. An actual controversy has arisen between the parties concerning whether USLI has a defense obligation to the Sigmatek Defendants in connection with an underlying *qui tam* lawsuit filed by Defendant McCarthy under the Federal False Claims Act (31 U.S.C. § 3729, et

seq.) against the Sigmatek Defendants in a case styled *United States ex rel. Lawrence McCarthy v. Marathon Technologies, Inc., Sigmatek, Inc. d/b/a MTI Sigmatek, and Jerry Kozlowski*, No. 11-cv-7071 (N.D. Ill.) ("*McCarthy* Lawsuit").

3. USLI seeks a declaration from the Court declaring that it has no duty to defend or indemnify the Sigmatek Defendants in connection with the *McCarthy* Lawsuit.

## PARTIES

4. Plaintiff USLI is, and at all relevant times was, a citizen of the state of Pennsylvania because it is incorporated under the laws of Pennsylvania and it maintains its principal place of business in Wayne, Pennsylvania.

5. Defendant Sigmatek is, and at all relevant times was, a citizen of the state of Illinois because it is incorporated under the laws of Illinois and its principal place of business is located at 800 Nicholas Blvd., Elk Grove Village, Illinois 60007. Upon information and belief, Sigmatek also does business as MTI Sigmatek.

6. Defendant Marathon is, and at all relevant times was, a citizen of the state of Illinois because it is incorporated under the laws of Illinois and its principal place of business is located at 800 Nicholas Blvd., Elk Grove Village, Illinois 60007. Upon information and belief, Marathon also does business as MTI Sigmatek.

7. Defendant Kozlowski is an adult citizen of Illinois who, upon information and belief, is the owner and operator of Sigmatek and Marathon.

8. Upon information and belief, Defendant McCarthy is an adult citizen of Illinois.

## JURISDICTION

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as Plaintiff USLI is a citizen of the state of Pennsylvania and Defendants are citizens of the state of

Illinois. Further, the matter in controversy arises out of the Sigmatek Defendants' demand for coverage under the USLI Policy, which exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over the Sigmatek Defendants because they have conducted business in Illinois at all relevant times, and the insurance policy at issue was issued in Illinois where Sigmatek and Marathon are located. This Court has personal jurisdiction over Defendant McCarthy because, during the relevant time period, he was a citizen of Illinois and he initiated the *McCarthy* Lawsuit in this District.

## VENUE

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because this action seeks a determination regarding the applicability of an insurance policy that was issued to Sigmatek in this District, this action concerns coverage for an underlying lawsuit that was filed by Defendant McCarthy in this District, and a substantial part of the events or omissions giving rise to the *McCarthy* Lawsuit occurred in this District.

## FACTS

**A.     The United States Liability Insurance Company Policy**

12. USLI issued Employment Practices Liability Insurance Policy EPL101393E ("USLI Policy"), attached hereto as Exhibit A, to Sigma Tek Inc. dba Marathon Technologies as the Named Insured for the policy period from February 19, 2013 to February 19, 2014.

13. The USLI Policy is a claims-made policy that is limited to coverage for "**Claims** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if purchased." (emphasis in original.)

14. The Insuring Agreement at Section I. of the USLI Policy provides:

I. INSURING AGREEMENT

    A. The **Company** will pay on behalf of the **Insured, Loss** in excess of the Retention not exceeding the Limit of Liability shown on the policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the Policy Period or during any Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.

    B. The **Company** has the right and the duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

(emphasis in original)

15. Section III (Definitions) of the USLI Policy provides, among other things, the following definitions:

**"Claim"** means:

    (1) any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**, or

    (2) any proceeding initiated against any **Insured,** including any appeal therefrom, seeking to hold such **Insured** responsible for a **Wrongful Act**, including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency, and any appeal therefrom;

A **Claim** shall be considered first made when the **Insured** or its legal representative or agent first receives notice of a **Claim**.

**"Wrongful Act"** means any actual or alleged act of:
    **(1)** **Discrimination;** or
    **(2)** **Harassment;** or
    **(3)** **Retaliation;** or
    **(4)** **Wrongful Termination;** or
    **(5)** **Workplace Tort;** or
    **(6)** negligent violation of the Uniform Services Employment & Reemployment Rights Act; or
    **(7)** negligent violation of the Family and Medical Leave Act of 1993; or

    **(8)**    negligent violation of state law having the same or substantially similar purpose as the Acts in **(6)** or **(7)** above; or

    **(9)**    acts described in clauses **(1)** through **(8)** above arising from the use of the **Organization's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** Internet, e-mail, and telecommunication or similar systems;

committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such, involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization** or asserted by any **Employee**, former **Employee** or applicant for employment with the **Organization** against an **Individual Insured** because of his/her status as such.

It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

**"Discrimination"** means:
    **(1)**    the termination of an employment relationship; or
    **(2)**    a demotion or a failure to hire or promote any individual; or
    **(3)**    any other limitation or classification of an **Employee** or applicant for employment which would deprive any individual of employment opportunities or adversely affect any individual's status as an **Employee**;

Because of race, color, religion, age, sex, disability, pregnancy, national origin, marital status, sexual orientation or other protected class or characteristic established under applicable federal, state, or local statute, ordinance, regulation or order.

**"Harassment"** means:
    **(1)**    sexual harassment including unwelcome sexual advances, request for sexual favors. . . ; or
    **(2)**    other harassment which creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance.

**"Retaliation"** means any actual or alleged retaliatory treatment against an **Employee** because of:
    **(1)**    the exercise of or attempt to exercise an **Employee's** rights under the law; or

      **(2)**    an **Employee's** disclosure of or threat to disclose to a governmental agency or superior, acts of actual or alleged wrongdoing by an **Insured**; or

      **(3)**    the filing of any claim under any federal, state, or local "whistle-blower" law including the Federal False Claims Act; or

      **(4)**    **Employee** strikes or slowdowns.

**"Wrongful Termination"** means the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any **Employee** in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment.

**"Workplace Tort"** means any actual or alleged employment-related:
      **(1)**    misrepresentation; or
      **(2)**    negligent supervision, training or evaluation; or
      **(3)**    wrongful discipline; or
      **(4)**    wrongful deprivation of a career opportunity; or
      **(5)**    failure to enforce written policies and procedures relating to a **Wrongful Act**.

(emphasis in original.)

**B.**    **The *McCarthy* Lawsuit**

16. The *McCarthy* Lawsuit was originally filed on October 6, 2011. The lawsuit, which is currently pending in this District, was filed by Defendant McCarthy, as relator ("Relator") on behalf of the United States, under the Federal False Claims Act ("FCA"). The *McCarthy* Lawsuit names Sigmatek, Marathon, and Kozlowski as defendants in the Complaint ("*McCarthy* Complaint"), which is the operative complaint (attached hereto as Exhibit B).

17. The *McCarthy* Complaint alleges that the United States contracted directly with Marathon and Sigmatek to provide MK93 Gun Mounts and M3 Tripods, respectively, to various governmental agencies within the Department of Defense. According to the *McCarthy* Complaint, Marathon, Sigmatek, and Kozlowski conspired and committed acts of fraud to intentionally deviate and/or omit critical quality assurance functions and processes to increase their profits by reducing the cost of producing the MK93 Gun Mounts and M3 Tripods, their

components and parts, thereby producing and delivering "Non-Military Grade" product, but representing the product as "Military Grade" to the United States Government.

18. According to the *McCarthy* Complaint, the Sigmatek Defendants' quality assurance program specifically failed to ensure that the MK93 Gun Mounts and M3 Tripods were produced in a manner which conformed to the approved and required contract terms, production methods, government engineering requirements, design specifications, and the Department of Defense's test standards and contractual requirements of ISO9001 – Quality Management System Requirements. The Sigmatek Defendants then allegedly fraudulently conspired to conceal this information from the United States Government and failed to inform the United States Government of their breakdown of its quality assurance functions and processes.

19. The *McCarthy* Complaint alleges that it was because of their fraud and conspiracies, from at least between 2006 and 2011, that the Sigmatek Defendants were able to outbid the competition, which resulted in the Sigmatek Defendants receiving in excess of $20 Million in contracts to produce and deliver MK93 Gun Mounts and M3 Tripods to the United States Government.

20. In the *McCarthy* Complaint, Relator alleges the Sigmatek Defendants made false claims of compliance with the Department of Defense's requirements for payments and describes specific violations by the Sigmatek Defendants of contractual requirements, including: failure to do magnetic particle inspections; failure to do required stress relieving; use of non-approved vendors; use of non-military specification hardware from approved vendors; improper signing of certificates of conformance; and fraudulently obtaining contracts from the United States Army.

7

21. The *McCarthy* Complaint alleges six causes of action against the Sigmatek Defendants, which are all based upon alleged violations of Section 3729(a)(1) of the FCA.

22. Counts I and II of the *McCarthy* Complaint allege Kozlowski, Marathon and Sigmatek violated Section 3729(a)(1)(A) and (B) of the FCA by knowingly presenting to an employee of the United States Government false or fraudulent claims for payment when it presented fraudulent Certificates of Conformance with the associated DD Form 250s and demands for payment for the MK93 Gun Mounts and M3 Tripods expressly and implicitly representing compliance with contractual requirements.

23. Count III of the McCarthy Complaint alleges Kozlowski, Marathon and Sigmatek violated Section 3729(a)(1)(C) of the FCA by conspiring to defraud the United States Government and committing acts of fraud to intentionally deviate and/or omit critical quality assurance functions and processes to significantly reduce the cost to produce the MK93 Gun Mounts and M3 Tripods, thus producing and delivering Non-Military Grade products, but representing the products as Military Grade.

24. Count IV of the *McCarthy* Complaint alleges Kozlowski and Sigmatek violated Section 3729(a)(1)(A) of the FCA by knowingly presenting to an employee of the United States Government false or fraudulent claims for payment in connection with Contract No. W52H09-08-D-0147 ("Contract") by presenting demands for payment for the M3 Tripods when Sigmatek did not qualify as a HUBZone Company at the time the Contract was awarded or at the time of the demands for payment.

25. Count V of the *McCarthy* Complaint alleges Kozlowski and Sigmatek knowingly made, used, or caused to be made or used false records or statements to get a false or fraudulent claim paid or approved by the United States Government when it presented the false or

8

fraudulent application with the U.S. Small Business Administration ("SBA") to become HUBZone certified, provided false or fraudulent documentation in connection with Solicitation No. W52H09-07-R-0375 to demonstrate that Sigmatek was HUBZone certified by the SBA, and presented fraudulent Certificates of Conformance with the associated DD Form 250s and demands for payment for the M3 Tripods when Sigmatek did not qualify as a HUBZone Company at the time the Contract was awarded or at the time of the demands for payment.

26. Count VI of the *McCarthy* Complaint alleges Kozlowski and Sigmatek violated Section 3729(a)(1)(C) of the FCA by conspiring to defraud the United States Government. They allegedly presented a false and fraudulent application to the SBA to become HUBZone certified, provided false or fraudulent documentation in connection with Solicitation No. W52H09-07-R-0375 to demonstrate that Sigmatek was HUBZone certified by the SBA, and presented fraudulent Certificates of Conformance with the associated DD Form 250s and demands for payment for the M3 Tripods when Sigmatek did not qualify as a HUBZone Company at the time the Contract was awarded or at the time of the demands for payment.

27. In each cause of action, the Relator seeks the following damages: an amount equal to three (3) times the amount of damages the United States Government has sustained because of the Sigmatek Defendants' actions, plus a civil penalty of $5,500 to $11,000 for each violation of the FCA, and the costs of the *McCarthy* Lawsuit; the Relator's costs, including reasonable attorneys' fees; an award to the Relator of between 15% and 25% of the proceeds of the action or settlement of the *McCarthy* lawsuit with respect to those allegations for which the United States Government intervenes; and an award to the Relator of between 35% and 30% of the proceeds of the action or settlement with respect to those allegations for which the United States Government does not intervene.

9

**C.     Sigmatek Defendants' Notice of Claim and the Parties' Coverage Dispute**

28.     The Sigmatek Defendants provided notice and tendered the defense of the *McCarthy* Lawsuit to USLI via an e-mail from the Sigmatek Defendants' attorney dated January 6, 2014.

29.     On January 22, 2014, USLI's attorney provided a letter notifying the Sigmatek Defendants' attorney that the Policy does not provide coverage, either defense or indemnity, for the *McCarthy* Lawsuit because it is a *qui tam* claim that results from allegations of fraud and conspiracy against the United States Government and not from wrongful employment practices.

30.     In order to avoid the costs associated with a declaratory judgment action, USLI's attorney's letter invited Sigmatek's attorney to sign an enclosed letter agreement confirming that the Sigmatek Defendants were withdrawing the tender to USLI and acknowledging that the USLI Policy did not provide a defense or indemnity for the *McCarthy* Lawsuit.

31.     Sigmatek's attorney has not responded to the letter of January 22, 2014.

**COUNT I – DECLARATORY JUDGMENT – NO DUTY TO DEFEND**
**(The *McCarthy* Lawsuit Does Not Allege Facts Falling Within Coverage)**

32.     Plaintiff incorporates and adopts the allegations asserted in Paragraphs 1 through 31 as if fully repeated herein.

33.     Section I of the USLI Policy states that: "The **Company** will pay on behalf of the **Insured, Loss** . . . that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the Policy Period or during any Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**. (emphasis in original.)

34. Section V.D. of the USLI Policy states that: "… the **Company** shall be liable to pay only **Defense Costs** and **Loss** in excess of the Retention specified in the Policy Declarations hereof as respects each and every **Claim** to which this Policy applies." (emphasis in original.)

35. The *McCarthy* Lawsuit alleges six causes of action against the Sigmatek Defendants for alleged violations of Section 3729(a)(1) of the FCA on the basis that the Sigmatek Defendants conspired and committed acts of fraud to intentionally deviate and/or omit critical quality assurance functions and processes to increase their profits by reducing the cost of producing the MK93 Gun Mounts and M3 Tripods, their components and parts, thereby producing and delivering "Non-Military Grade" product, but representing the product as "Military Grade" to the United States Government.

36. In each count, the Relator seeks the following damages: an amount equal to three (3) times the amount of damages the United States Government has sustained because of the Sigmatek Defendants' actions, plus a civil penalty of $5,500 to $11,000 for each violation of the FCA, and the costs of the *McCarthy* Lawsuit; the Relator's costs, including reasonable attorneys' fees; an award to the Relator of between 15% and 25% of the proceeds of the action or settlement of the *McCarthy* lawsuit with respect to those allegations for which the United States Government intervenes; and an award to the Relator of between 35% and 30% of the proceeds of the action or settlement with respect to those allegations for which the United States Government does not intervene.

37. The Relator's causes of action under the FCA do not constitute a "Claim" (as defined by the USLI Policy) seeking to hold an Insured responsible for a "Wrongful Act." Rather, the Relator's causes of action under the FCA are *qui tam* causes of action that seek

damages resulting from the allegations that the Sigmatek Defendants are liable for defrauding and conspiring against the United States Government.

38. Accordingly, the *McCarthy* Complaint does not allege facts within or potentially within the coverage of the USLI Policy and USLI does not have a duty to defend the Sigmatek Defendants in connection with the *McCarthy* Lawsuit.

39. An actual and present controversy exists between USLI and the Sigmatek Defendants concerning the Sigmatek Defendants' respective rights and obligations under the USLI Policy. USLI is entitled to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

WHEREFORE, Plaintiff, UNITED STATES LIABILITY INSURANCE COMPANY, prays as follows:

A. That this Court determine and adjudicate the rights and liabilities of the parties with respect to the policies of insurance described above.

B. That this Court find and declare that USLI does not have a duty to defend or indemnify the Sigmatek Defendants in connection with the McCarthy Lawsuit under the terms, conditions, and exclusions of the USLI Policy and/or applicable law.

C. That this Court grant such other and further relief as it deems proper under the evidence and circumstances.

Respectfully submitted,

United States Liability Insurance Company


By: /s/Lawrence S. Gosewisch
    One of Its Attorneys

Lawrence S. Gosewisch
David J. Altschuler
ADLER MURPHY & McQUILLEN LLP
20 S. Clark Street, Suite 2500
Chicago, Illinois 60603
(312) 345-0700
Attorney No. 32597