UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SIGMATEK, INC., MARATHON TECHNOLOGIES, INC., JERRY KOZLOWSKI, and LAWRENCE McCARTHY,<br><br>Defendants. | No. 14 C 1747<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff United States Liability Insurance ("USLI") brings this action against Sigmatek, Inc. ("Sigmatek"), Marathon Technologies, Inc. ("Marathon"), Jerry Kozlowski (collectively, the "Sigmatek Defendants"), and Lawrence McCarthy, seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This action arises out of an underlying qui tam lawsuit (the "*McCarthy* lawsuit") filed under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, by the relator-plaintiff McCarthy against the Sigmatek Defendants. *United States ex rel. McCarthy v. Marathon Techs., Inc.*, No. 11-cv-7071 (N.D. Ill. filed Oct. 6, 2011) (Coleman, J.). USLI seeks a declaration that it does not have a duty to defend or indemnify the Sigmatek Defendants in connection with the *McCarthy* lawsuit. Presently before the Court is USLI's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, the Court denies USLI's motion for judgment on the pleadings and concludes that USLI has a duty to defend the Sigmatek Defendants in connection with the *McCarthy* lawsuit.

## RELEVANT FACTS

USLI is a Pennsylvania corporation with its principal place of business in Pennsylvania. (R. 1, Compl. ¶ 4.) Defendants Sigmatek and Marathon are Illinois corporations with their principal places of business in Illinois. (*Id.* ¶¶ 5-6.) Defendant Kozlowski is a citizen of Illinois, and the owner and operator of Sigmatek and Marathon. (*Id.* ¶ 7.) Defendant McCarthy is also a citizen of Illinois, and a former employee of Sigmatek and Marathon. (*Id.* ¶ 8; R. 1-2, Ex. 2, *McCarthy* Compl. ¶ 15.)

### I. The Insurance Policy

USLI issued Employment Practices Liability Insurance Policy EPL101392E (the "Insurance Policy") to Sigma Tek Inc. d/b/a Marathon Technologies as the Named Insured for the policy period from February 19, 2013, to February 19, 2014. (R. 1, Compl. ¶ 12; R. 1-1, Ex. 1, Insurance Policy at 3.) The Insurance Policy covers "only those **Claims** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if purchased." (R. 1-1, Ex. 1, Insurance Policy at 14.) Under the Insurance Policy, USLI is obligated to "pay on behalf of the **Insured, Loss** . . . for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, for **Wrongful Acts**[.]" (*Id.*) Additionally, USLI "has the right and the duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent." (*Id.*)

The Insurance Policy limits a "Claim" to "(1) any written notice received by any **Insured** that any person or entity intends to hold such Insured responsible for a **Wrongful Act**; or (2) any proceeding initiated against any **Insured** . . . seeking to hold such **Insured** responsible for a

2

**Wrongful Act[.]**" (*Id.*) The Insurance Policy defines "Wrongful Act" as any actual or alleged act of:

> **(1) Discrimination;** or
> **(2) Harassment;** or
> **(3) Retaliation;** or
> **(4) Wrongful Termination;** or
> **(5) Workplace Tort;** or
> **(6)** negligent violation of the Uniform Services Employment & Reemployment Rights Act; or
> **(7)** negligent violation of the Family and Medical Leave Act of 1993; or
> **(8)** negligent violation of state law having the same or substantially similar purpose as the Acts in **(6)** or **(7)** above; or
> **(9)** acts descried in clauses **(1)** through **(8)** above arising from the use of the **Organization's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** Internet, e-mail, telecommunication or similar systems;
>
> committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such, involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization** or asserted by any **Employee**, former **Employee** or applicant for employment with the **Organization** against an **Individual Insured** because of his/her status as such.

(*Id.* at 16.)

The Insurance Policy defines the terms "Discrimination," "Harassment," "Retaliation," "Wrongful Termination," and "Workplace Tort," as follows:

> **'Discrimination'** means:
> **(1)** the termination of an employment relationship; or
> **(2)** a demotion or failure to hire or promote any individual; or
> **(3)** any other limitation or classification of an **Employee** or applicant for employment which would deprive any individual of employment opportunities or adversely affect any individual's status as an **Employee**;
>
> because of race, color, religion, age, sex, disability, pregnancy, national origin, marital status, sexual orientation or other protected class or characteristic established under applicable federal, state, or local statute, ordinance, regulation or order.
>
> **'Harassment'** means:

3

**(1)** sexual harassment including unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that is hostile, intimidating or offensive or that interferes with performance; or

**(2)** other harassment which creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance.

'**Retaliation**' means any actual or alleged retaliatory treatment against an Employee because of:

**(1)** the exercise of or attempt to exercise an **Employee's** rights under law; or

**(2)** an **Employee's** disclosure of or threat to disclose to a governmental agency or superior, acts of actual or alleged wrongdoing by an **Insured**; or

**(3)** the filing of any claim under any federal, state, or local 'whistle-blower' law including the Federal False Claims Act; or

**(4) Employee** strikes or slowdowns.

'**Wrongful termination**' means the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any **Employee** in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment.

'**Workplace Tort**' means any actual or alleged employment-related:

**(1)** misrepresentation; or

**(2)** negligent supervision, training or evaluation; or

**(3)** wrongful discipline; or

**(4)** wrongful deprivation of a career opportunity; or

**(5)** failure to enforce written policies and procedures relating to a **Wrongful Act**.

(*Id.* at 15-16.)

## II. The *McCarthy* lawsuit

On October 6, 2011, McCarthy, acting as relator on behalf of the United States, filed a six-count complaint (the "*McCarthy* Complaint") in this District under the FCA against the Sigmatek Defendants. (R. 1, Compl. ¶ 16; R. 1-2, Ex. 2, *McCarthy* Compl.) According to the *McCarthy* Complaint, the United States Army contracted with Marathon and Sigmatek to produce and deliver MK93 Heavy Machine Gun Mounting Systems ("MK93 Gun Mounts") and M3 Tripod Mounts ("M3 Triopds"). (R. 1-2, Ex. 2, *McCarthy* Compl. ¶¶ 53-54.) The *McCarthy* Complaint alleges that the Sigmatek Defendants "knowingly submitted, caused to be submitted

or facilitated the submission of false and fraudulent documents (including Certificates of Conformance) to federal agencies, certifying that certain MK93 Gun Mounts and M3 Tripods, and their components and parts, were manufactured in accordance with contract terms and design specifications, and would perform properly" and could be safely used in military combat and military exercises. (*Id.* ¶ 5.) These false and fraudulent documents were allegedly submitted to the government along with the documents requesting payment and approval of the MK93 Gun Mounts and M3 Tripods. (*Id.*) The *McCarthy* Complaint alleges that the Sigmatek Defendants' "quality assurance program specifically failed to ensure that the MK93 Gun Mounts and M3 Tripods, [and] their components and parts, were produced in a manner which conformed to the approved and required contract terms, products methods, government engineering requirements, design specifications, and to the Department of Defense's inspection and test standards[.]" (*Id.* ¶ 22.) The Sigmatek Defendants allegedly "fraudulently conspired to conceal this information from the United States Government and failed to inform the United States Government of their breakdown of its quality assurance functions and processes[.]" (*Id.* ¶ 23.) The *McCarthy* Complaint alleges that it was because of their fraud and conspiracies, from at least 2006 to 2011, the Sigmatek Defendants "were able to outbid the competition, which resulted in the [Sigmatek] Defendants receiving in excess of $20 Million in contracts to produce and deliver MK93 Gun Mounts and M3 Tripods to the United States Government." (*Id.* ¶ 24.)

McCarthy allegedly discovered the Sigmatek Defendants' acts of fraud while he was employed by Marathon as the Buyer/Purchasing Manager and ISO9001 Administrator/Internal Auditor/Management Representative. (*Id.* ¶¶ 11, 15, 34-45.) A Defense Contract Management Agency ("DCMA") auditor came to Sigmatek and Marathon in December 2010 to perform audits in connection with the MK 93 Gun Mounts and M3 Tripods, and the Sigmatek Defendants

allegedly had difficulties producing the required documentation requested by the DCMA auditor. (*Id.* ¶¶ 46-47.) McCarthy allegedly knew that Kozlowski was concerned that McCarthy would be truthful in response to the DCMA auditor's questions and that Kozlowski would blame him for any noncompliance. (*Id.* ¶ 48.) As a result of Kozlowski's "behavior" toward him, McCarthy allegedly "was forced to terminate his employment" with the Sigmatek Defendants on or about January 17, 2011. (*Id.*)

Count I of the *McCarthy* Complaint alleges that the Sigmatek Defendants violated Section 3729(a)(1)(A) of the FCA when they "knowingly presented to an employee of the United States Government false or fraudulent claims for payment[.]" (*Id.* ¶¶ 151-52.) Count II alleges that the Sigmatek Defendants violated Section 3729(a)(1)(B) of the FCA when they knowingly made false statements that were material to the alleged false claims referenced in Count I. (*Id.* ¶¶ 159-160.) Count III alleges that the Sigmatek Defendants violated Section 3729(a)(1)(C) of the FCA when they conspired to submit false claims. (*Id.* ¶¶ 167-71.) Count IV alleges that Sigmatek and Kozlowski violated Section 3729(a)(1)(A) of the FCA when they submitted claims for payment on a contract obtained through a fraudulent HUBZone certification. (*Id.* ¶¶ 178-79.) Count V alleges that Sigmatek and Kozlowski violated Section 3729(a)(1)(B) of the FCA when they knowingly made false statements that were material to the false claims referenced in Count IV. (*Id.* ¶¶ 186-87.) Finally, Count VI alleges that Sigmatek and Kozlowski violated Section 3729(a)(1)(C) of the FCA when they conspired to submit the false claims and statements alleged in Counts IV and V. (*Id.* ¶¶ 196-200.)

In her Memorandum Opinion and Order issued on September 30, 2014, Judge Coleman dismissed Counts III and VI of the *McCarthy* Complaint. *See United States ex rel. McCarthy v. Marathon Techs., Inc.*, No. 11-cv-7071, 2014 WL 4924445 (N.D. Ill. Sept. 30, 2014). Judge

Coleman denied the Sigmatek Defendants' request to dismiss the remaining counts, however, and the case remains pending. *See id.*

### III. The parties' coverage dispute

USLI alleges that the Sigmatek Defendants provided notice and tendered the defense of the *McCarthy* lawsuit to USLI via an e-mail from the Sigmatek Defendants' attorney dated January 6, 2014. (R. 1, Compl. ¶ 28.) On January 22, 2014, USLI's attorney sent a letter to the Sigmatek Defendants' attorney, claiming that the Insurance Policy does not provide coverage for the *McCarthy* lawsuit "because it is a qui tam claim that results from allegations of fraud and conspiracy against the United States Government and not from wrongful employment practices." (*Id.* ¶ 29.) USLI alleges that counsel for the Sigmatek Defendants failed to respond to the letter. (*Id.* ¶ 31.)

## PROCEDURAL HISTORY

USLI initiated this action on March 12, 2014. (R. 1, Compl.) In Count I, the sole count of the complaint, USLI seeks a declaratory judgment establishing that it does not have a duty to defend or indemnify the Sigmatek Defendants in connection with the *McCarthy* lawsuit under the terms of the Insurance Policy. (*Id.* ¶¶ 32-39.) McCarthy answered the complaint on July 18, 2014, (R. 17, McCarthy Answer), and the Sigmatek Defendants answered the complaint on October 30, 2014, (R. 25, Sigmatek Answer).

On August 22, 2014, USLI moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (R. 20, Pl.'s Mot.) The Sigmatek Defendants responded on October 30, 2014, (R. 26, Defs.' Resp.), USLI replied on December 5, 2014, (R. 33, Pl.'s Reply), and the Sigmatek Defendants filed a sur-reply on December 19, 2014, (R. 34, Defs.' Sur-Reply).

## LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings alone. Fed. R. Civ. P. 12(c); *N. Ind. Gun & Outdoor Shows, Inc v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The pleadings consist of the "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452 (citing Fed. R. Civ. P. 10(c)). Courts generally apply the same standard to a Rule 12(c) motion as to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). When a party seeks to use a Rule 12(c) motion "to dispose of the case on the basis of the underlying substantive merits," however, "the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993). In these cases, courts must accept as true all well-pleaded allegations, and view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.*; *see also Emergency Servs. Billing Corp., Inc. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012). A court should grant a Rule 12(c) motion for judgment on the pleadings only if "no genuine issues of material fact remain to be resolved" and the moving party "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

## ANALYSIS

USLI argues that it has no duty to defend or indemnify the Sigmatek Defendants in connection with the *McCarthy* lawsuit because "the *McCarthy* Complaint fails to allege any facts that bring the case within, or potentially within, coverage of the [Insurance] Policy." (R. 21,

Pl.'s Mem. at 9.) Under Illinois law,[1] "[a]n insurer's duty to defend its insured is much broader than its duty to indemnify its insured." *Gen. Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005); *see also Chandler v. Doherty*, 702 N.E.2d 634, 637 (Ill. App. Ct. 1998) ("an insurer may be required to defend its insured even when there will ultimately be no obligation to indemnify"). Whether an insurer must defend its insured is a question resolved by comparing the allegations of the underlying complaint against the insured to the language of the insurance policy. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 847 (Ill. 1995). "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Gen. Agents Ins.*, 828 N.E.2d at 1098. "If the facts alleged [in the underlying complaint] fall within, or potentially within, the [insurance] policy's coverage, the insurer is obligated to defend its insured." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006). "This is true even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Id.* Thus, an insurer may refuse to defend only if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Id.*

Here, the Insurance Policy covers any "Claim" made against the Sigmatek Defendants for "Wrongful Acts." (R. 1-1, Ex. 1, Insurance Policy at 14.) "Wrongful Act" is defined as any actual or alleged act of discrimination, harassment, retaliation, wrongful termination, or workplace tort. (*Id.* at 16.) USLI argues that the underlying complaint in the *McCarthy* lawsuit does not assert a claim seeking to hold the Sigmatek Defendants responsible for a wrongful act

---

[1] The parties agree that Illinois law governs this insurance dispute. (R. 21, Pl.'s Mem. at 9; R. 26, Defs.' Resp. at 3.)

as defined in the Insurance Policy. (R. 21, Pl.'s Mem. at 9.) USLI contends that the *McCarthy* lawsuit is instead a "*qui tam* action brought pursuant to the FCA and seeks damages resulting from allegations that the Sigmatek Defendants conspired to defraud the United States Government by submitting false records, making false statements, and submitting false claims for payment in connection with contracts to produce MK93 Gun Mounts and M3 Tripods." (*Id.* at 10.) The Sigmatek Defendants counter that McCarthy is suing them "for wrongful employment practices, along with false billings." (R. 26, Defs.' Resp. at 9.) They contend that the *McCarthy* Complaint alleges harassment, wrongful termination, retaliation, and discrimination as defined in the Insurance Policy, and therefore USLI has a duty to defend them in the lawsuit. (*Id.* at 7-11.)

In the underlying complaint, McCarthy alleges that during his employment, he discovered that the Sigmatek Defendants were not producing MK93 Gun Mounts and M3 Tripods that complied with the specifications and requirements of the government contracts. (R. 1-2, Ex. 2, *McCarthy* Compl. ¶¶ 11, 32-45.) McCarthy alleges that he reported these issues to Kozlowski and questioned why certain parts of the MK93 Gun Mounts were not being sent out for the required inspections; he alleges that Kozlowski "advised and instructed" him to violate government specifications and falsify documents. (*Id.* ¶¶ 35, 40, 75.) McCarthy further alleges that Kozlowski was "growing more and more concerned" over the lack of necessary documentation requested by the DCMA auditor, and "was applying continued pressures upon [McCarthy] who knew that the [Sigmatek] Defendants were knowingly producing and delivering to the United States Government MK93 Gun Mounts and M3 Tripods that did not meet the acceptable quality levels defined by the contracts." (*Id.* ¶ 47.) McCarthy alleges that he "knew that Defendant Kozlowski would blame [him] for any noncompliance, and that Kozlowski was

concerned that [McCarthy] would be truthful in response to the DCMA auditor's questions." (*Id.* ¶ 48.) As a result of Kozlowski's "behavior towards [him]," McCarthy alleges that he "was forced to terminate his employment." (*Id.*)

The Court agrees with the Sigmatek Defendants that these allegations in the *McCarthy* Complaint support a claim for harassment, wrongful termination, retaliation, or discrimination as defined in the Insurance Policy. USLI nevertheless argues that these allegations are simply "background allegations," and emphasizes that "all six causes of action in the complaint are all for fraud and false claims based upon alleged violations of Section 3729(a)(1) of the FCA." (R. 33, Pl.'s Reply at 2-3.) USLI correctly notes that McCarthy does not assert a separate claim for wrongful employment practices. However, when considering whether an insurance company has a duty to defend, a court "should not simply look to the particular legal theories pursued by the claimant [in the underlying action], but must focus on the allegedly tortious conduct on which the lawsuit is based." *Medmarc Cas. Ins. Co. v. Avent America, Inc.*, 612 F.3d 607, 613 (7th Cir. 2010) (applying Illinois law); *see also Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 696 (7th Cir. 2009) (applying Illinois law) ("the factual allegations in the complaint, and not the legal labels a plaintiff uses, control"). This is because the duty to defend "should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E.2d 680, 688 (Ill. App. Ct. 2000). Thus, McCarthy's failure to assert a separate count for wrongful employment practices is not dispositive to this coverage dispute. However, although the Court must focus on factual allegations above legal theories, "factual allegations are only important insofar as they point to a theory of recovery." *Momence Meadows*, 566 F.3d at 696; *see also Ill. Emcasco Ins. Co. v. Northwestern Nat'l Cas. Co.*, 785 N.E.2d 905, 908 (Ill. App. Ct. 2003)

11

(noting that the duty to defend arises "if the insurance covers the liability on any set of facts consistent with the allegations needed to support recovery on any theory raised in the complaint"). Therefore, the Court must determine whether the allegations in the *McCarthy* Complaint point to a theory of recovery for wrongful employment acts.

USLI argues that McCarthy is only seeking damages for alleged violations of Section 3729(a)(1) of the FCA. (R. 21, Pl.'s Mem. at 10-11; R. 33, Pl.'s Reply at 3-4.) The Sigmatek Defendants counter that McCarthy is also seeking to recover for wrongful employment practices because in every count of his complaint, McCarthy: (1) realleges prior paragraphs in the complaint describing his mistreatment on the job including wrongful discharge; (2) seeks relief under 31 U.S.C § 3730(h) (the FCA's remedy for wrongful employment practices) by realleging paragraph one of the complaint; and (3) alleges a broad prayer of relief that he "receive all relief, both in law and at equity, to which . . . [h]e may reasonably appear entitled." (R. 26, Defs.' Resp. at 10.)

Paragraph one of the *McCarthy* Complaint states, in pertinent part, that McCarthy "brings this action as a *qui tam* action for himself and for the United States Government, pursuant to 31 U.S.C § 3730(b) and (h)."[2] (R. 1-2, Ex. 2, *McCarthy* Compl. ¶ 1.) Section 3730(h) of the FCA, entitled "Relief from retaliatory actions," states in pertinent part:

> (1) In general.—Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

---

[2] Section 3730(b) provides: "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C § 3730(b).

12

> (2) Relief.—Relief under paragraph (1) shall include reinstatement with the same seniority status that employee . . . would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination . . . .

31 U.S.C § 3730(h). Thus, Section 3730(h) entitles an employee to certain remedies such as reinstatement, back pay plus interest, and damages if his employer committed a wrongful employment act. *Id.* USLI correctly notes that paragraph one is the only mention of Section 3730(h) in the entire 204 paragraph complaint. However, McCarthy incorporates paragraph one in each of his six counts. Because the Court is required to view the complaint in the light most favorable to the insured, *Gen. Agents Ins.*, 828 N.E.2d at 1098, the Court finds that incorporating Section 3730(h) in each count, along with his broad prayer for all relief to which he may reasonably appear entitled to, is sufficient to assert a claim for relief for wrongful employment practices.

USLI argues that the Seventh Circuit's decision in *Momence Meadows*, as well as the Illinois appellate court's decision in *Ismie Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC*, 921 N.E.2d 1156 (Ill. App. Ct. 2009), supports its contention that McCarthy's background allegations simply underlie his FCA claims and do not point to a theory of recovery. (R. 22, Pl.'s Mem. at 12-14.) In *Momence Meadows*, an insurer sought a declaratory judgment that it had no duty to defend or indemnify the insured nursing center against an underlying qui tam suit filed by former employees for violations of the FCA and Illinois Whistleblower Reward and Protection Act ("IWRPA"). 566 F.3d at 691. The former employees claimed that the nursing center had provided substandard care to patients and then submitted false Medicare and Medicaid certifications attesting that it had provided quality services and care. *Id.* The insurance policy at issue obligated the insurer to defend any suit seeking damages "because of any injury that is caused by a medical incident arising out of the providing or withholding of

13

various professional services, including medical or nursing treatment." *Id.* at 694 (internal quotation marks omitted). The nursing center argued that two counts of the underlying complaint—the FCA and IWRPA claims—fell within the scope of the insurance policy because the numerous allegations of physical harm to the residents were incorporated in those counts. *Id.* The Seventh Circuit affirmed the district court's grant of the declaratory judgment, holding that the statutory damages the employees sought "result from those allegedly false filings, and *not* from any alleged bodily injury to the residents." *Id.* at 694-95. The court stated that although the allegations in the underlying complaint detailing the injuries suffered by the nursing center residents "put a human touch on the otherwise administrative act of false billing, they need not be proven by the plaintiffs to prevail. Under the FCA and the IWRPA, the plaintiffs d[id] not have to show that any damages resulted from the shoddy care." *Id.* at 695. However, the Seventh Circuit came to this conclusion because the court found it "impossible to construe the underlying complaint as raising any theory of recovery based on bodily injury." *Id.* at 696. The court noted that "[n]either of the plaintiffs in the underlying suit seeks damages for personal injury caused by substandard medical care. Nor could they—[the plaintiffs] were employees of [the nursing center], not residents, and they lack standing to sue on the residents' behalf." *Id.* Here, by contrast, the Court has construed the *McCarthy* Complaint as raising a theory of recovery based on wrongful employment acts as defined in the Insurance Policy.

The Seventh Circuit's reasoning in *Momence Meadows* was adopted by the Illinois appellate court in *Ismie*. In *Ismie*, an insurer sought a declaration that it had no duty to defend or indemnify the insured physician against a qui tam action brought by his former employees under the FCA for alleged submission of false Medicare claims for reimbursement of numerous medically unnecessary cataract surgeries and invasive follow-up procedures. 921 N.E.2d at

1159. The medical malpractice insurance at issue covered claims against the physician involving personal injury caused by professional services, and so the physician argued that the underlying alleged unnecessary medical procedures and surgeries constituted personal injuries necessitating the duty to defend. *Id.* at 1164. The court disagreed with the physician, holding that "[t]he fact that the insurer might have to defend a medical malpractice claim stemming from a claim subject to the false claim allegations does not require a finding that the same insurer is required to defend the *qui tam* case tied to the false claim allegations." *Id.* The court explained that as in *Momence Meadows*, "the plaintiffs in the underlying case here, the former employees of [the physician], do not seek damages for personal injury caused by medical care falling below the requisite standard of care, nor could they, because they do not have standing to sue on behalf of these patients." *Id.* Therefore, *Ismie* is also distinguishable from the case at hand on this basis. McCarthy can, and does, seek damages for the wrongful employment acts committed by his employer.

Additionally, USLI requests that the Court take judicial notice of the Sigmatek Defendants' motion to dismiss and the accompanying briefs in the underlying *McCarthy* lawsuit. (R. 33, Pl.'s Reply at 5.) USLI contends that neither the Sigmatek Defendants nor McCarthy indicated in any of their briefs at the motion to dismiss stage that McCarthy is seeking damages due to wrongful employment acts. (*Id.*) USLI asserts that Judge Coleman's Memorandum Opinion and Order resolving the motion to dismiss the *McCarthy* Complaint also "did not contain a single reference to any claim for relief by [McCarthy] for retaliatory actions by the Sigmatek Defendants." (*Id.* at 6.) According to USLI, this is further proof that McCarthy is not seeking to recover for wrongful employment practices. (*Id.* at 5-6.) The Sigmatek Defendants counter that "[s]imply because [they] did not focus on [McCarthy's claim for Section 3730(h)

15

relief] and fight about it in early motion practice does not erase it from McCarthy's Complaint or make it go away." (R. 34, Defs.' Sur-Reply at 4.) The Court agrees with the Sigmatek Defendants. The Sigmatek Defendants' motion to dismiss addressed how each count of the *McCarthy* Complaint failed to sufficiently plead a claim under Section 3729(a)(1) of the FCA; McCarthy responded to the Sigmatek Defedants' arguments. *See United States ex rel. McCarthy*, 2014 WL 4924445 at *3-*5. The fact that neither party addressed McCarthy's claim for Section 3730(h) relief at the motion to dismiss stage does not preclude McCarthy from raising that claim for relief later on in the lawsuit.

Accordingly, the Court finds that the allegations in the *McCarthy* Complaint point to a theory of recovery for wrongful employment acts as defined in the Insurance Policy. Thus, because "it is clear from the face of the underlying complaint that the allegations set forth in the complaint [] state facts that bring the case within, or potentially within, the coverage of the policy," USLI has a duty to defend the Sigmatek Defendants in the *McCarthy* Lawsuit. *See Valley Forge*, 860 N.E.2d at 315. The Court therefore denies USLI's motion for judgment on the pleadings.

Finally, USLI also seeks a declaration that it does not have a duty to indemnify the Sigmatek Defendants in connection with the *McCarthy* lawsuit. (R. 1, Compl.) Neither party, however, addresses this issue in their supporting briefs. Nevertheless, under Illinois law, the duty to indemnify can be determined only after the insured becomes legally obligated to pay damages in the underlying lawsuit. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992). Additionally, "the determination of an insurer's duty to indemnify is particularly ill-suited for declaratory judgment when the insured's underlying liability suit is ongoing." *Nat'l Union Fire Ins. of Pittsburgh, PA. v. Manpower, Inc.*, No. 10 C 2383, 2011 WL

16

124242 (N.D. Ill. Jan. 12, 2011) (Castillo, J.); *see also Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (applying the Seventh Circuit's general rule that "decisions about indemnity should be postponed until the underlying liability has been established" to a declaratory judgment action). Therefore, because the *McCarthy* lawsuit is still pending, the Court finds that a declaratory judgment determining whether USLI has a duty to indemnify the Stigmatek Defendants is premature at this time. Accordingly, the Court dismisses without prejudice USLI's request for declaratory judgment regarding its duty to indemnify the Sigmatek Defendants. *See Medical Assurance Co., Inc. v. Hellman*, 610 F.3d 371, (7th Cir. 2010) (finding that a dismissal without prejudice is the proper resolution of a case where the duty to indemnify claim is not ripe).

## CONCLUSION

For the foregoing reasons, USLI's motion for judgment on the pleadings (R. 20) is DENIED. The Court orders USLI to defend the Sigmatek Defendants in connection with the *McCarthy* lawsuit. The Court dismisses the complaint without prejudice. USLI is granted leave to seek a declaratory judgment regarding its duty to indemnify once the *McCarthy* lawsuit is adjudicated.

ENTERED: /s/ Rubén Castillo

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: February 20, 2015**